UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS SALZBRUN,             Case No. 1:16-cv-402

    Plaintiff,                            Judge Timothy S. Black

vs.

WARREN COUNTY
COMMUNITY SERVICES, INC.,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (Doc. 13)**

This civil action is before the Court regarding Defendant Warren County Community Services, Inc. ("WCCS")'s motion for summary judgment (Doc. 13) and the parties' responsive memoranda (Docs. 29, 31).

**I.     BACKGROUND**

Plaintiff Thomas Salzbrun was employed by WCCS as its Executive Director from March 2011 to October 20, 2014. (Doc. 29-2, at 1). WCCS is a charitable, nonprofit organization dedicated to providing social services to seniors, children, and others in need throughout Warren County, Ohio. As Executive Director, Plaintiff oversaw all day to day operations of WCCS. (Doc. 11-8). Plaintiff was in charge of developing policies, procedures and programs to implement the long term goals and objectives of WCCS. *Id.* Plaintiff also was in charge of developing and monitoring an annual budget for WCCS in conjunction with the organization's Director of Accounting Operations. *Id.* Plaintiff also served as the public figurehead of WCCS and was responsible for maintaining effective

1

relationships both internally with WCCS staff and externally with other organizations and members of the community. *Id.* As the chief staff executive, Plaintiff reported directly to WCCS's Board of Trustees ("the Board"). The Board, which consisted of sixteen members at the time of Plaintiff's termination, contains a subset of five members known as the "Executive Committee." The Executive Committee is authorized to act with the authority of the Board to transact routine business when calling a non-scheduled full Board meeting would be impractical. (Doc. 11-6, at 2). The Executive Committee is also given special supervisory authority over the Executive Director, as the Committee performs initial screening of candidates for an open Executive Director position and conducts an annual performance evaluation of the Executive director which is then presented to the full Board. Although the smaller Executive Committee was responsible for providing oversight of Plaintiff, the full Board appointed Plaintiff to the Executive Director position and was the only entity with the ability to remove him. (*Id.* ("The Executive Committee shall not have the authority to employ or discharge the Executive Director.")).

Plaintiff was diagnosed with Parkinson's disease in approximately 2000. (Doc. 29-2, at 1). According to Plaintiff, his symptoms began to worsen significantly in 2013 and 2014, which limited his ability to sleep, concentrate, engage in social interactions, and use his hands. (Doc. 29, at 7). Plaintiff only disclosed his Parkinson's diagnosis to select WCCS employees on an "as-needed basis." (*Id.*). Specifically, prior to 2014 Plaintiff had disclosed his diagnosis to Lisa Baker, the WCCS Executive Secretary, and Cathy Payne, the IT Director and HR Manager, for the purpose of obtaining

accommodations for his symptoms, specifically a left-handed mouse and voice recognition software. (Doc. 11, at 20–21, 32-33). Ms. Payne gave Plaintiff a voice recognition program for use at the office, but it did not work to Plaintiff's satisfaction, and he and Ms. Payne had not implemented a replacement before Plaintiff's termination. (*Id.* at 32–33). Plaintiff states that he did not make any member of the Board aware of his diagnosis until the September 24, 2014 meeting that is discussed in detail below.

Plaintiff had a generally positive relationship with WCCS until late 2013, when the long-serving president of the Board, Dr. Peckham, died and was replaced by interim president, Dr. Don Jusczyck. Upon his ascension to the Board presidency, Dr. Jusczyck sought to expand upon the previously sparse and formalistic evaluations of the Executive Director. To that end, Dr. Jusczyck forwarded a copy of a largely positive self-evaluation Plaintiff had completed in February 2014 to the Executive Committee members to ask for their input. (Doc. 24-1, at 3).

Based on input received from the Executive Committee, Dr. Jusczyck and fellow Executive Committee member Jack Collopy held a meeting with Plaintiff in April 2014 in which Plaintiff was given several new goals set by the Board designed to improve his overall performance. Those goals included the preparation of an annual budget and the development of a regular communications process with the heads of the staff departments at WCCS. (Doc. 24-1, at 7). Plaintiff acknowledged concerns expressed at that meeting regarding his lack of communication with Board members and staff members. (*Id.* at 9).

During the summer of 2014, the Executive Committee solicited written evaluations regarding Plaintiff's job performance from both the full Board (Doc. 11-20)

3

and the WCCS senior staff who reported to Plaintiff (Doc. 11-21).  Dr. Jusczyck and Mr. Collopy prepared a 10 page composite of these comments for presentation to Plaintiff. (Doc. 11-22).  Several of the comments from these evaluations expressed the opinion that Plaintiff should no longer serve as the WCCS executive director.

An Executive Committee meeting was held on September 24, 2014 to give Plaintiff a formal performance review based on the feedback received.  Plaintiff was present at the meeting.  The Executive Committee discussed Plaintiff's perceived lack of performance at the meeting.  Plaintiff was shown copies of all the individual evaluations filled out by Board members and WCCS staff.  (Doc. 11, at 187–88).  Plaintiff had already received a copy of the composite of evaluation comments before the September 24, 2014 meeting.  (*Id.* at 230).  The Executive Committee outlined for Plaintiff their view that the evaluations from the Board and staff were largely negative and reflected upon Plaintiff's failure to improve upon the numerous areas previously identified as needing improvement.  (*Id.* at 190).  Each of the present Executive Committee members (one of the five had left at this point) then described to Plaintiff examples of what they personally saw as shortcomings in Plaintiff's performance.  (*Id.* at 190–91).  A member of the Committee then asked to see a copy of Plaintiff's employment agreement with WCCS.  (*Id.* at 191).

After all present members of the Executive Committee had outlined their negative opinion of Plaintiff's job performance, Plaintiff for the first time informed the Committee of his Parkinson's diagnosis.  Plaintiff told the Committee that although his condition was not life threatening, he "was going to need some accommodations."  (Doc. 11, at 192).

4

When the Committee asked what kind of accommodations would be needed, Plaintiff mentioned a left-handed mouse, push to talk software, and "understanding." (*Id.*). Plaintiff was informed by Dr. Jusczyck one hour after the September 24, 2014 Executive Committee meeting that the Executive Committee was going to recommend his termination to the full Board of Trustees. (Doc. 11-24, at 3).

The Executive Committee recommended Plaintiff's termination at the next full Board meeting on October 20, 2014. (Doc. 11-25, at 4). The Board voted 11-1 in favor of adopting the Executive Committee's recommendation and terminating Plaintiff effective immediately (three members were absent). (*Id.* at 3). Plaintiff was replaced as WCCS Executive Director by Eugene Rose, a man three years his junior.

Plaintiff timely filed a charge of discrimination with the Equal Opportunity Employment Commission (EEOC) on March 26, 2015. (Doc. 1, at 2). The EEOC issued a Notice of Right to Sue on December 22, 2015. (*Id.*). Plaintiff filed the complaint in the present case March 21, 2016. (Doc. 1). Plaintiff has raised claims of age discrimination and disability discrimination under the Americans with Disabilities Act and Ohio law. (*Id.* at 4–6).

## II.     STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine

5

disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III.   ANALYSIS

#### A.   Age Discrimination

Age discrimination cases under the ADEA are analyzed under the same framework as employment discrimination cases under Title VII. See *Policastro v. Northwest Airlines*, Inc. 297 F. 3d 535, 538 (6th Cir. 2002). Proof in such cases proceeds in three stages. First, in order to prove a *prima facie* case of discrimination, a Plaintiff must show: (1) that he is a member of a protected group; (2) that he was subject to an adverse employment decision; (3) that he was qualified for the position; and (4) that he was replaced by a person outside the protected class. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 349 (6th Cir. 1997).

In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replaced by a significantly younger person. *Kline*, 128 F. 3d at 352–53.

If the Plaintiff can establish a *prima facie* case, the burden then shifts to the Defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection. *Kline*, 128 F. 3d at 342. Third, after the Defendant has met this burden, the Plaintiff must produce sufficient evidence in which the jury may reasonably reject the employer's explanation. *See Manzer v. Diamond Shamrock Chemical Company*, 29 F. 3d 1078, 1083 (6th Cir. 1994).

In this case, Plaintiff cannot establish a *prima facie* case of age discrimination because he was not replaced with a substantially younger person. Plaintiff was born in 1956, and his replacement was born in 1959. (Doc. 13, at 16). The Court of Appeals for the Sixth Circuit has held that, absent direct evidence that the employer considered age to be significant in the decision to terminate an employee, an age difference of fewer than six years cannot be found to be significant for purposes of the fourth part of an age discrimination prima facie case. *Grossjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003). There is no direct evidence of age discrimination in this case. Therefore, Plaintiff cannot show a *prima facie* case of age discrimination and the claim must be dismissed at summary judgment.[1]

Accordingly, Plaintiff's claim against Defendant alleging age discrimination is dismissed.

---

[1] Plaintiff's response to the motion for summary judgment (Doc. 29) does not address Defendant's arguments regarding age discrimination. Plaintiff therefore appears to concede the point.

### B. Disability Discrimination

Plaintiff additionally claims that he "was terminated on account of his disability and/or perceived disability" in violation of the ADEA and Ohio law. (Doc. 1, at 4). It is unclear whether Plaintiff wishes to raise a general disability discrimination claim or the related "failure to accommodate" claim. However, both claims fail as a result of Plaintiff's untimely disclosure of his Parkinson's diagnosis.

Defendant argues that, even if Plaintiff were disabled and had made a reasonable request for accommodations, that the request was untimely and therefore cannot be the basis for an employment discrimination claim. (Doc. 13, at 13, 15). Defendant's argument is correct. "When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late.'" *Parsons v. Auto Club Group*, 565 F. App'x 446, 449 (6th Cir. 2014) (quoting *Jones v. Nationwide Line Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012)). The evidence in this case clearly demonstrates that the Executive Committee had taken significant concrete steps to remove Plaintiff before ever learning about Plaintiff's disability. By the time Plaintiff had revealed his Parkinson's diagnosis, the Executive Committee had already compiled the largely negative reviews from the WCCS Board and

staff,[2] given their own harsh assessment of Plaintiff's leadership abilities, and asked to analyze Plaintiff's employment agreement. The writing was on the wall long before Plaintiff had divulged his diagnosis, and Defendant was not required to reverse the process already in motion solely because Plaintiff mentioned that he had a disability. Because of the extraordinarily late timing of Plaintiff's divulgence of his Parkinson's diagnosis, no reasonable finder of fact could look at the evidence in this case and conclude that any part of the decision to recommend Plaintiff's termination was influenced by that diagnosis. Plaintiff was going to be terminated, disability or no.[3]

Plaintiff argues that *Parsons* is inapposite to this case because the court in *Parsons* found that the Plaintiff had not requested an accommodation, while Plaintiff in this case

---

[2] Plaintiff's response to the motion for summary judgment argues that the composite document prepared by Dr. Jusczyck and Mr. Collopy was not representative of the performance evaluations of the WCCS Board and staff as a whole. The Court has reviewed each of the individual evaluations included in the record, and finds that while there is no universal consensus, they are in fact largely negative. This is particularly the case with regard to the reviews filled out by the senior staff members of WCCS who reported to Plaintiff. (*See* Doc. 11-21). Plaintiff's staff in large part considered Plaintiff to be an ineffective leader and poor communicator who was not actively engaged in the day to day processes of WCCS to the extent required to be a good Executive Director. The overwhelmingly negative nature of these reviews strengthens the conclusion that Plaintiff's termination was a foregone conclusion before he divulged his Parkinson's diagnosis, and that Plaintiff's termination therefore could not be the result of discrimination based on his disability.

[3] Plaintiff's response to the motion for summary judgment argues that the Executive Committee's reasons for terminating Plaintiff were disingenuous, claiming that the comments received from the WCCS Board and staff were not as negative as characterized by Defendant and also that the Executive Committee did not do enough work to verify the accuracy of certain negative assertions by staff members. Plaintiff may or may not be correct in his general assertion that the Executive Committee was determined to fire Plaintiff regardless of cause. However, Plaintiff was an at will employee of WCCS, and he therefore could be fired for any reason or no reason at all, so long as WCCS was not motivated by Plaintiff's membership in a class protected by law. (Doc. 11-3, at 2). The timing of Plaintiff's disclosure of his Parkinson's diagnosis precludes a reasonable finder of fact from finding the diagnosis had an impact on the decision to terminate him; therefore, the Court need not attempt to discern whether the actual reasons offered for Plaintiff's termination by WCCS were in fact true.

requested a reasonable accommodation before his termination. Plaintiff's statement regarding the circumstances in *Parsons* is correct, but the Sixth Circuit explicitly stated in *Parsons* that *even if* an accommodation had been made, the analysis regarding untimeliness quoted above would apply. *Parsons*, 565 F. App'x at 449. Plaintiff also argues that "there is a question of fact as to whether Salzbrun requested reasonable accommodations before the Executive Committee had reached a recommendation on his termination." (Doc. 29, at 21). While the Executive Committee did not actually recommend to the full Board of Trustees that Plaintiff be terminated until one month after Plaintiff had divulged his Parkinson's diagnosis, the large accumulation of evidence suggesting that the Executive Committee, WCCS Board, and WCCS senior staff were unhappy with Plaintiff's performance as Executive Director demonstrate beyond any dispute of material fact that Plaintiff's termination was in motion before anyone with relevant authority knew Plaintiff had Parkinson's disease.

Accordingly, Plaintiff's claims of disability discrimination are dismissed.

## IV. CONCLUSION

Accordingly, for the reasons stated above,

1) Defendant's motion for summary judgment (Doc. 13) is **GRANTED**;

2) Plaintiff's complaint is **DISMISSED WITH PREJUDICE**;

3) The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

Date: 7/13/17

_Timothy S. Black_
Timothy S. Black
United States District Judge